```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA


SEAN PRESSLEY,                  )
                Plaintiff,      )   Civil Action No. 01-2350
                                )
        v.                      )   Judge Terrence F. McVerry
                                )   Magistrate Judge Lisa P. Lenihan
SUPT. P. JOHNSON, ET AL.,       )
                Defendants.     )
```

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment filed by Defendant Rueda (doc. no. 231) be granted. It is further respectfully recommended that the Motion for Summary Judgment filed by the Commonwealth Defendants (doc. no. 228) be granted as to Plaintiff's First Amendment access to courts claims and denied as to Plaintiff's First Amendment retaliation claims.

II.  REPORT

Plaintiff, Sean Pressley, an inmate previously incarcerated at the State Correctional Institution at Pittsburgh, Pennsylvania (SCIP), commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. Named as Defendants are various former employees/agents of the Pennsylvania Department of Corrections (DOC) at the State Correctional Institution at Pittsburgh (SCIP) including: Superintendent P. Johnson; C. O. Clark; C.O. Yonlinsky; C.O. M. Freeman; C.O. G. Freeman; Lt. Blakely; Captain T. McConnell; C.O. W. Duke; C.O. Abrams; C.O. Crumb; Captain Clayborne; P.A. F. Polando; Dr. Rueda; Deputy Supt. Dickson; C.O.

B. Knight; C.O. Fuller; C.O. Neiport; Capt. Simpson; H.E. Matthews; Sgt. Bedilion; C.O. Fridley; C.O. Sipos; John Doe # 1; John Doe # 2, C.O. Onstott; C.O. Shafer; John Doe # 3; H.E. Ferson; John Doe # 4; John Doe # 5; Lt. Bovo; C.O. Rose; C.O. Johnson; C.O. Akers; Sgt. Giddens; Nurse Danner; John Doe # 6; Lt Holms; Supt. Blaine; John Doe # 7; Major Hassett; Deputy Supt. Miller; Smith: Mahlmeister; Bruno; and Capt. Grainey.  In his Amended Complaint, Plaintiff claimed that Defendants violated his rights as protected by the First, Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

On March 23, 2003, this Court granted Defendants' Motion to Dismiss Plaintiff's Fourth, Eighth and Fourteenth Amendment claims (doc. no. 137).  His claims of access to courts and retaliation remained pending.  Defendants now have filed motions for summary judgment (doc. nos. 228 and 231).

### A. Plaintiff's Allegations

In his Amended Complaint, Plaintiff avers the following.  On September 9, 1999, while he was asleep in his cell, correctional officers Clark, Yonlinsky, M. Freeman and G. Freeman awakened him to search his cell.  During the search Defendant Clark saw 17 copies of a yet to be filed civil action stacked on Plaintiff's desk.  In order to get a closer look at the document, Defendant Clark invented a reason to lock Plaintiff up by claiming that a bar of laundry soap stuffed in a sock next to a bucket of soapy

water was a weapon.  Plaintiff was handcuffed and taken to Lt. Blakely's office and placed in a holding cell.  Although Plaintiff attempted to explain to Lt. Blakely that the sock was not a weapon but was being used to wash Plaintiff's whites, he was transferred to the restricted housing unit (RHU).  Defendant Clark returned to Plaintiff's cell and conspired with the other correctional officers to unlawfully take a copy of the unfiled civil action and turn it over to Lt. Blakely who then turned it over to Defendant McConnell.

On September 9, 1999, Plaintiff received a misconduct concerning the alleged weapon.  On November 8, 1999, Plaintiff was released from the RHU back to his cell where he discovered that the search team had taken a copy of his yet to be filed civil action.  Between October 25 and 28, 1999, Defendant McConnell met with Defendants Duke, Abrams, Crumb, Clayborne, Rueda, and Polando, all of which were named defendants in the yet to be filed civil action.  At this meeting, Defendants created false and misleading statements to combat the assertions made in Plaintiff's yet to be filed civil action under the disguise of a re-investigation of grievance no. 0969-98-PIT.  On October 26, 1999, Plaintiff was taken to the RHU lieutenants office where, at the instruction of Defendant McConnell, Lt. Blakely proceeded to interrogate him about his lawsuit.  On October 29, 1999 McConnell prepared a report and submitted it to Defendant Dickson.  The

defendants in civil action no 99-1956 are using this report containing false and misleading information in that action.

A few days after civil action 99-1956 was served, Defendants Knight, Fuller, Neiport and Crumb came to an agreement to retaliate against Plaintiff for having filed that action.  In furtherance of that agreement, Defendant Knight wrote a false misconduct report A237738 accusing Plaintiff of threatening an employee.  Defendant Simpson approved this misconduct report without investigating the incident to determine whether it was credible and placed Plaintiff in the RHU.  On March 29, 2000, a misconduct hearing was held before Defendant Matthews who denied Plaintiff the opportunity to present staff witnesses and found him guilty of the misconduct and sentenced him to ninety days disciplinary time.  During Plaintiff's disciplinary confinement, he was harassed by Defendant Crumb on a daily basis. Specifically, Defendant Crumb tore up his requests to use the mini library and refused to allow him to have his one-hour daily exercise time.

On March 31, 2000, Defendants Bedilion, Fridley and Sipos came to an agreement to write a false misconduct report A237741 accusing Plaintiff of refusing an order and possession of contraband.  Defendant John Doe # 1 approved this misconduct report without investigating the incident to see if the report was credible.  On April 6, 2000, Defendant Ferson found Plaintiff

guilty of the misconduct, denying him his requested witnesses, his request to submit documentary evidence and refusing to produce the documents attached to the misconduct.

On April 11, 2000, Plaintiff prepared a box containing legal folders with original exhibits that needed to be copied for civil action 99-1956, together with books and rugs to ship to his mother's home, and presented it to John Doe # 2 to ship out.  On May 12, 2000, Defendant John Doe # 2 informed Plaintiff that this box was taken from the storage area by some unauthorized person and was now missing.  On July 27, 2000, Defendant Onstott shipped a box to Plaintiff at SCI-Greene that contained the folders but did not contain the books or rugs.  In addition, some of the exhibits were missing out of the folders.

On May 5, 2000, after a dispute with Plaintiff during the exercise period, Defendants Abrams and Shafer came to an agreement to retaliate against Plaintiff by issuing a false misconduct A255265 accusing Plaintiff of using abusive language and refusing to obey an order.  Defendant John Doe # 3 approved the report without investigating the incident to see if the report was credible.  On May 9, 2000, a hearing was held before Defendant Ferson and the misconduct was dismissed without prejudice.  On May 10, 2000 Defendant Shafer rewrote the misconduct A255266 and John Doe # 4 approved the report without investigation.  On May 15, 2000, a hearing was held where Defendant Ferson found Plaintiff

guilty of the misconduct and imposed sixty days of disciplinary time.

On May 30, 2000, inmate Fauntleroy asked Plaintiff to contact the administration about pursuing criminal charges against two officers that had assaulted him.  On June 13, 2000, Defendants Bovo, Rose, Johnson, Akers, Giddens, Abrams, Duke and Danner came to an agreement to retaliate against Plaintiff by filing false misconduct report A220003 accusing him of threatening an employee in order to separate Plaintiff and inmate Fauntleroy.  Defendant John Doe approved the misconduct report without investigation.  As a result of the misconduct report, Defendants Johnson and Blaine effected an emergency transfer of Plaintiff to SCI-Greene.  A misconduct hearing was held on June 13, 2000 before Defendant Ansell, who found Plaintiff guilty of the misconduct and sentenced him to sixty days of disciplinary time.

On August 24, 200, Defendant Holmes, employed at SCIP, came to Plaintiff's cell at SCI-Greene harassing and intimidating him about civil action 99-1956.

On January 21, 2001, Defendant John Doe #7 prepared a DC-141 Other Report recommending that Plaintiff be placed in administrative custody (AC).  On March 1, 2001 a hearing was held before Defendants Hassett, Miller and Smith at which time Plaintiff was placed in the RHU.  Another hearing was held on March 6, 2001, before Defendants Mahlmeister, Bruno and Grainey

who decided to place Plaintiff on AC status.  The Plaintiff alleges that he was placed in AC status based on incidents that occurred at SCIP.

### B. Standard of Review

Defendants have filed Motions for Summary Judgment under Federal Rule of Civil Procedure 56.  Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(c).  The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

### C. Liability Under 42 U.S.C. § 1983

Plaintiff's complaint seeks recovery under 42 U.S.C. § 1983. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements:  1) the alleged misconduct must have been committed by a person acting under color of state law; and 2) the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have <u>personal</u> involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.  Rizzo v. Goode, 423 U.S. 362 (1976).  Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions.  Rode, 845 F.2d at 1207. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  *Id*.  *See also* Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

Plaintiff's remaining claims arise under the First Amendment, which provides as follows.

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I.

1.  <u>Access to Courts</u>

Plaintiff asserts that Defendants violated his right of access to courts as guaranteed by the First Amendment. Specifically, Plaintiff asserts that the Commonwealth Defendants and Dr. Rueda conspired to hinder his efforts to pursue his legal action filed in this court at Civil Action No. 99-1956.

In <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), the United States Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." <u>Id</u>. at 828.  In <u>Christopher v. Harbury</u>, 536  U.S. 403, 415 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts.  Specifically, the Supreme Court held that, in order to state a claim for denial of access to

courts, a party must identify all of the following in the complaint:  1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit.

Plaintiff cannot state a claim of denial of his right of access to the courts <u>as a matter of law</u> because he was represented by counsel David E. Sweitzer during the pre-trial and jury trial proceedings in that action.  Where an inmate is represented by counsel, his right of access to the courts is satisfied as a matter of law.[1]  Plaintiff's appointed counsel in civil action no. 99-1956 satisfies the alternative requirement of <u>Bounds</u> of providing assistance from persons trained in the law.

Moreover, Plaintiff has not shown that he suffered any actual injury caused by Defendants' actions.  *See* <u>Lewis v. Casey</u>, 518

---

1.  <u>Sanders v. Rockland County Correctional Facility</u>, No. 94 Civ. 3691, 1995 WL 479445 at *2 (S.D.N.Y. Aug. 14, 1995) ("By the appointment of counsel, plaintiff was afforded meaningful access to the courts in his trial."); <u>Rogers v. Thomas</u>,  No. 94-4692, 1995 WL 70548 at *2 (E.D.Pa. Feb. 17, 1995), *aff'd*, 65 F.3d 165 (3d Cir. 1995) (Table) (notwithstanding that legal papers were taken from plaintiff inmate by prison officials, "plaintiff was not denied access to the courts because he was represented by court-appointed counsel, during the entire pendency of the appeal to which the legal papers related. Thus, plaintiff was actually provided with, not denied, legal assistance."); <u>Williams v. Vaughn</u>, No. 90-5617, 1991 WL 34429 at *4 (E.D. Pa. March 12, 1991) ("Thus, [plaintiff-inmate] Williams was not actually injured by any inability to gain access to the law library since he ultimately obtained representation.").

U.S. 343, 354-55 (1996) (holding that, in order to establish a violation of the right of access to the courts, a plaintiff must demonstrate that a defendant took, or was responsible for, actions that hindered a plaintiff's efforts to pursue a non-frivolous legal claim, which resulted in actual injury to the plaintiff). Consequently, all Defendants are entitled to summary judgment as to Plaintiff's access to courts claim.

   2.   Retaliation

Plaintiff also claims that the Commonwealth Defendants violated his First Amendment rights by retaliating against him for filing grievances and lawsuits.[2]  It is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under section 1983.  Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990).  However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things:  (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to

---

   2.  None of Plaintiff's retaliation claims concern Defendant Rueda.  Thus, he is entitled to summary judgment as to this claim as well.

take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997). If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Under the first element, a plaintiff must show that he engaged in constitutionally-protected activity. Here, Plaintiff alleges that the Commonwealth Defendants retaliated against him because he had filed numerous grievances and lawsuits. A prisoner's ability to file grievances and lawsuits against prison officials is a constitutionally-protected activity for purposes of

a retaliation claim.  See Atkinson v. Taylor, 316 F.3d 257, 269 (3d Cir. 2003) (stating that the right of prisoners to petition the court is a recognized constitutional right); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution). Thus, Plaintiff's allegations satisfy the first element of a retaliation claim.

Under the second element of a retaliation claim, a plaintiff must allege that he was subjected to adverse actions by a state actor.  A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  See Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).  With respect to the second element, Plaintiff alleges that just days after his lawsuit at Civil Action 99-1956 was served, he received a "false" misconduct and was transferred to the RHU.  He also claims that he was denied the use of the mini law library and denied his exercise time when he was confined in the RHU. Further, he claims that certain Defendants conspired to issue false misconducts against him and he was found guilty of these various misconducts and received several increments of disciplinary custody.  He also claims that he was transferred to SCI-Greene and ultimately transferred to AC status as a result of

his litigation activities. These allegations are sufficient to demonstrate the second element of a retaliation claim. *See* Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2002) (holding that prisoner's allegation that he was falsely charged with misconduct in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); Allah, 229 F.3d at 225 (holding that an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim).

The third element of a retaliation claim requires a plaintiff to demonstrate that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. This "motivation" factor may be established by alleging a chronology of events from which retaliation plausibly may be inferred. Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996); Pride v. Peters, 72 F.3d 132 (Table), 1995 WL 746190 (7th Cir. 1995).

Plaintiff has alleged that, shortly after his civil action 99-1956 was served, Defendants Knight, Fuller, Neiport and Crumb retaliated against him by filing a false misconduct report A237738 accusing him of threatening an employee. During his misconduct hearing before Defendant Matthews, Plaintiff was denied the opportunity to present staff witnesses and was found guilty of the misconduct and sentenced to ninety days disciplinary time. During

his disciplinary confinement, Plaintiff claims that he was harassed by Defendant Crumb on a daily basis.  Specifically, Defendant Crumb tore up his requests to use the mini library and refused to allow him to have his one-hour daily exercise time.  On March 31, 2000, another false misconduct report A237741 was issued and again Plaintiff was denied his requested witnesses and his request to submit documentary evidence.  He again was found guilty and was sentenced to disciplinary time.  He further claims that Defendants retaliated against him by stealing his property, including exhibits to be used in Civil Action 99-1956.  Another misconduct was issued on May 5, 2000; Plaintiff received sixty days of disciplinary time for that misconduct report.  Shortly thereafter, Plaintiff was transferred to SCI-Greene after he contacted the administration on behalf of another inmate about pursuing criminal charges against two officers that had assaulted him.  Sometime thereafter, Defendant Holmes, who was employed at SCIP, came to Plaintiff's cell at SCI-Greene harassing and intimidating him about civil action 99-1956.  Finally, Plaintiff claims that he was placed in AC custody on January 21, 2001 based on incidents that occurred at SCIP.

    An inference can be drawn, based upon the misconducts, the transfers, the alleged unjustified placement in administrative confinement, the refusal to allow exercise and library time, that these acts were done to retaliate against Plaintiff for filing his

lawsuit at Civil Action 99-1956.  Thus, the burden shifts to Defendants to prove that their actions were justified by a legitimate penological interest.

Defendants have not submitted any evidence to sustain their burden of proof.  Instead, they argue that the stated legitimate penological purposes of the misconducts is "unimpeachable" because the misconducts have not been reversed or set aside citing Carter v. McGrady, 292 F.3d 152 (3d Cir. 2002).  In that case, the Court of Appeals for the Third Circuit held that, even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering.  "Given the quantum of evidence of Carter's misconduct, we cannot say that prison officials' decision to discipline Carter for his violations of prison policy was not with the 'broad discretion' that we must afford [the defendants.]" *Id*. at 158.

Notably, the case does not stand for the general proposition that a finding of guilt satisfies a defendant's burden of showing that he would have brought the misconduct charge.  Here, Plaintiff alleges that Defendants filed false misconducts and denied him the ability to call witnesses or present documentary evidence at his disciplinary hearings.  Defendants have not submitted any evidence upon which this court could conclude that the misconducts,

transfer, AC status, and denial of library and exercise privileges would have occurred notwithstanding Plaintiff's actions in filing grievances and civil actions.  Thus, the Commonwealth Defendants are not entitled to summary judgment as to Plaintiff's retaliation claims.

III. CONCLUSION

It is respectfully recommended that the Motion for Summary Judgment filed by Defendant Rueda (doc. no. 231) be granted.  It is further respectfully recommended that the Motion for Summary Judgment filed by the Commonwealth Defendants (doc. no. 228) be granted as to Plaintiff's First Amendment access to courts claims and denied as to Plaintiff's First Amendment retaliation claims

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.


Dated: June 5, 2006                    /s/Lisa Pupo Lenihan
                                      LISA PUPO LENIHAN
                                      U.S. Magistrate Judge

cc:   Honorable Terrence F. McVerry
      United States District Judge

      Sean Pressley, CG-4129
      SCI Camp Hill
      P.O. Box 200
      Camp Hill, PA 17001 SCI Pittsburgh

      CERTIFIED MAIL
      RETURN RECEIPT REQUESTED

      Craig E. Maravich
      Deputy Attorney General
      Office of Attorney General
      6th Floor, Manor Complex
      564 Forbes Avenue
      Pittsburgh, PA 15219

      A. Tracey Campbell
      White & Williams
      1235 Westlakes Drive
      Suite 310, One Westlakes
      Berwyn, PA 19312-2416