IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN PRESSLEY, | ) | |
| Plaintiff, | ) | Civil Action No. 01-2350 |
| | ) | |
| v. | ) | Judge Terrence F. McVerry |
| | ) | Magistrate Judge Lisa P. Lenihan |
| SUPT. P. JOHNSON, ET AL., | ) | |
| Defendants. | ) | |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully recommended that the Supplemental
Motion for Summary Judgment filed by the Commonwealth Defendants
(doc. no. 255) be granted.

II.  REPORT

Plaintiff, Sean Pressley, an inmate previously
incarcerated at the State Correctional Institution at Pittsburgh,
Pennsylvania (SCIP), commenced this action pursuant to the Civil
Rights Act of 1871, 42 U.S.C. § 1983.  Named as Defendants are
various former employees/agents of the Pennsylvania Department of
Corrections (DOC).  In his Amended Complaint, Plaintiff claims
that Defendants violated his rights as protected by the First,
Fourth, Eighth and Fourteenth Amendments of the United States
Constitution.

On March 23, 2003, the Court granted Defendants' Motion
to Dismiss Plaintiff's Fourth, Eighth and Fourteenth Amendment
claims (doc. no. 137); his claims of access to courts and
retaliation remained pending.  On September 28, 2006, the Court

granted Defendants' Motion for Summary Judgment as to Plaintiffs' access to court claim and denied Defendants' Motion as to Plaintiff's retaliation claims (doc. no. 247). Defendants now have filed a Supplemental Motion for Summary Judgment as to Plaintiff's remaining retaliation claims (doc. nos. 255).

### A. Plaintiff's Allegations

In his Amended Complaint, Plaintiff avers the following. On September 9, 1999, while he was asleep in his cell, correctional officers Clark, Yonlinsky, M. Freeman and G. Freeman awakened him to search his cell. During the search Defendant Clark saw 17 copies of a yet to be filed civil action stacked on Plaintiff's desk. In order to get a closer look at the document, Defendant Clark invented a reason to lock Plaintiff up by claiming that a bar of laundry soap stuffed in a sock next to a bucket of soapy water was a weapon. Plaintiff was handcuffed and taken to Lt. Blakely's office and placed in a holding cell. Although Plaintiff attempted to explain to Lt. Blakely that the sock was not a weapon but was being used to wash Plaintiff's whites, he was transferred to the restricted housing unit (RHU). Defendant Clark returned to Plaintiff's cell and conspired with the other correctional officers to unlawfully take a copy of the unfiled civil action and turn it over to Lt. Blakely who then turned it over to Defendant McConnell.

On September 9, 1999, Plaintiff received a misconduct concerning the alleged weapon. On November 8, 1999, Plaintiff was released from the RHU back to his cell where he discovered that the search team had taken a copy of his yet to be filed civil action. Between October 25 and 28, 1999, Defendant McConnell met with Defendants Duke, Abrams, Crumb, Clayborne, Rueda, and Polando, all of which were named defendants in the yet to be filed civil action. At this meeting, Defendants created false and misleading statements to combat the assertions made in Plaintiff's yet to be filed civil action under the disguise of a re-investigation of grievance no. 0969-98-PIT. On October 26, 1999, Plaintiff was taken to the RHU lieutenant's office where, at the instruction of Defendant McConnell, Lt. Blakely proceeded to interrogate him about his lawsuit. On October 29, 1999 McConnell prepared a report and submitted it to Defendant Dickson. The defendants in civil action no 99-1956 are using this report containing false and misleading information in that action.

A few days after civil action 99-1956 was served, Defendants Knight, Fuller, Neiport and Crumb came to an agreement to retaliate against Plaintiff for having filed that action. In furtherance of that agreement, Defendant Knight wrote a false misconduct report A237738 accusing Plaintiff of threatening an employee. Defendant Simpson approved this misconduct report without investigating the incident to determine whether it was

- 3 -

credible and placed Plaintiff in the RHU.  On March 29, 2000, a misconduct hearing was held before Defendant Matthews who denied Plaintiff the opportunity to present staff witnesses and found him guilty of the misconduct and sentenced him to ninety days disciplinary time.  During Plaintiff's disciplinary confinement, he was harassed by Defendant Crumb on a daily basis. Specifically, Defendant Crumb tore up his requests to use the mini library and refused to allow him to have his one-hour daily exercise time.

On March 31, 2000, Defendants Bedilion, Fridley and Sipos came to an agreement to write a false misconduct report A237741 accusing Plaintiff of refusing an order and possession of contraband.  Defendant John Doe # 1 approved this misconduct report without investigating the incident to see if the report was credible.  On April 6, 2000, Defendant Ferson found Plaintiff guilty of the misconduct, denying him his requested witnesses, his request to submit documentary evidence and refusing to produce the documents attached to the misconduct.

On April 11, 2000, Plaintiff prepared a box containing legal folders with original exhibits that needed to be copied for civil action 99-1956, together with books and rugs to ship to his mother's home, and presented it to John Doe # 2 to ship out.  On May 12, 2000, Defendant John Doe # 2 informed Plaintiff that this box was taken from the storage area by some unauthorized person

and was now missing.  On July 27, 2000, Defendant Onstott shipped a box to Plaintiff at SCI-Greene that contained the folders but did not contain the books or rugs.  In addition, some of the exhibits were missing out of the folders.

On May 5, 2000, after a dispute with Plaintiff during the exercise period, Defendants Abrams and Shafer came to an agreement to retaliate against Plaintiff by issuing a false misconduct A255265 accusing Plaintiff of using abusive language and refusing to obey an order.  Defendant John Doe # 3 approved the report without investigating the incident to see if the report was credible.  On May 9, 2000, a hearing was held before Defendant Ferson and the misconduct was dismissed without prejudice.  On May 10, 2000 Defendant Shafer rewrote the misconduct A255266 and John Doe # 4 approved the report without investigation.  On May 15, 2000, a hearing was held where Defendant Ferson found Plaintiff guilty of the misconduct and imposed sixty days of disciplinary time.

On May 30, 2000, inmate Fauntleroy asked Plaintiff to contact the administration about pursuing criminal charges against two officers that had assaulted him.  On June 13, 2000, Defendants Bovo, Rose, Johnson, Akers, Giddens, Abrams, Duke and Danner came to an agreement to retaliate against Plaintiff by filing false misconduct report A220003 accusing him of threatening an employee in order to separate Plaintiff and inmate Fauntleroy.  Defendant

John Doe approved the misconduct report without investigation.  As a result of the misconduct report, Defendants Johnson and Blaine effected an emergency transfer of Plaintiff to SCI-Greene.  A misconduct hearing was held on June 13, 2000 before Defendant Ansell, who found Plaintiff guilty of the misconduct and sentenced him to sixty days of disciplinary time.

On August 24, 200, Defendant Holmes, employed at SCIP, came to Plaintiff's cell at SCI-Greene harassing and intimidating him about civil action 99-1956.

On January 21, 2001, Defendant John Doe #7 prepared a DC-141 Other Report recommending that Plaintiff be placed in administrative custody (AC).  On March 1, 2001 a hearing was held before Defendants Hassett, Miller and Smith at which time Plaintiff was placed in the RHU.  Another hearing was held on March 6, 2001, before Defendants Mahlmeister, Bruno and Grainey who decided to place Plaintiff on AC status.  The Plaintiff alleges that he was placed in AC status based on incidents that occurred at SCIP.

### B. Standard of Review

Defendants have filed a Motion for Summary Judgment under Federal Rule of Civil Procedure 56.  Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show

that there is no genuine issue of material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. Proc.
56(c). The moving party bears the initial burden of identifying
evidence that demonstrates the absence of a genuine issue of
material fact. Once that burden has been met, the non-moving
party must set forth "specific facts showing that there is a
<u>genuine issue for trial</u> . . ." or the factual record will be taken
as presented by the moving party and judgment will be entered as a
matter of law. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,
475 U.S. 574 (1986). An issue is genuine only if the evidence is
such that a reasonable jury could return a verdict for the non-
moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242
(1986).

### C. <u>Retaliation</u>

Plaintiff's remaining claims assert that Defendants
violated his First Amendment rights by retaliating against him for
filing grievances and lawsuits. It is well settled that
retaliation for the exercise of a constitutionally protected right
is itself a violation of rights secured by the Constitution, which
is actionable under section 1983. <u>Rauser v. Horn</u>, 241 F.3d 330
(3d Cir. 2001); <u>White v. Napoleon</u>, 897 F.2d 103, 112 (3d Cir.
1990). However, merely alleging the fact of retaliation is
insufficient; in order to prevail on a retaliation claim, a
plaintiff must show three things: (1) the conduct which led to

the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997). If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Under the first element, a plaintiff must show that he engaged in constitutionally-protected activity. Here, Plaintiff

- 8 -

alleges that Defendants retaliated against him because he had filed numerous grievances and lawsuits. A prisoner's ability to file grievances and lawsuits against prison officials is a constitutionally-protected activity for purposes of a retaliation claim. *See* Atkinson v. Taylor, 316 F.3d 257, 269 (3d Cir. 2003) (stating that the right of prisoners to petition the court is a recognized constitutional right); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution). Thus, Plaintiff's allegations satisfy the first element of a retaliation claim.

Under the second element of a retaliation claim, a plaintiff must allege that he was subjected to adverse actions by a state actor. A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *See* Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). With respect to the second element, Plaintiff alleges that just days after his lawsuit at Civil Action 99-1956 was served, he received a "false" misconduct and was transferred to the RHU. Further, he claims that Defendants conspired to issue false misconducts against him and he was found guilty of these various misconducts and received several increments of disciplinary custody. He also claims that he was transferred to SCI-Greene and

ultimately transferred to AC status as a result of his litigation activities.  These allegations are sufficient to demonstrate the second element of a retaliation claim.  *See* Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2002) (holding that prisoner's allegation that he was falsely charged with misconduct in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); Allah, 229 F.3d at 225 (holding that an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim).

The third element of a retaliation claim requires a plaintiff to demonstrate that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action.  This "motivation" factor may be established by alleging a chronology of events from which retaliation plausibly may be inferred.  Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996); Pride v. Peters, 72 F.3d 132 (Table), 1995 WL 746190 (7th Cir. 1995).

Plaintiff has alleged that, shortly after his civil action 99-1956 was served, Defendants Knight, Fuller, Neiport and Crumb retaliated against him by filing a false misconduct report A237738 accusing him of threatening an employee.  During his misconduct hearing before Defendant Matthews, Plaintiff was denied

- 10 -

the opportunity to present staff witnesses and was found guilty of the misconduct and sentenced to ninety days disciplinary time.   On March 31, 2000, another false misconduct report A237741 was issued and again Plaintiff was denied his requested witnesses and his request to submit documentary evidence.   He again was found guilty and was sentenced to disciplinary time.   He further claims that Defendants retaliated against him by stealing his property, including exhibits to be used in Civil Action 99-1956.   Another misconduct was issued on May 5, 2000; Plaintiff received sixty days of disciplinary time for that misconduct report.   Shortly thereafter, Plaintiff was transferred to SCI-Greene after he contacted the administration on behalf of another inmate about pursuing criminal charges against two officers that had assaulted him.   Sometime thereafter, Defendant Holmes, who was employed at SCIP, came to Plaintiff's cell at SCI-Greene harassing and intimidating him about civil action 99-1956.   Finally, Plaintiff claims that he was placed in AC custody on January 21, 2001 based on incidents that occurred at SCIP.   An inference can be drawn that these acts were done to retaliate against Plaintiff for filing his lawsuit at Civil Action 99-1956.   Thus, the burden shifts to Defendants to prove that their actions were justified by a legitimate penological interest.

1.   Misconduct No. 132479

        Plaintiff first asserts that Defendants issued false
misconduct no 132479 in retaliation for filing Civil Action No.
99-1956.  In this regard, on September 9, 1999 following a random
search of Plaintiff's cell, a large bar of laundry soap placed in
a sock with a knot tied just above the bar of soap, and gambling
paraphernalia including eleven betting slips and four sheets of
paper with schedules and betting odds was discovered.  Plaintiff
was issued misconduct number A132479 charging him with Possession
of Contraband and Gambling or Conducting a Gambling Operation
(doc. no. 255-2, p. 2).  A misconduct hearing was held on
September 14, 1999 by Hearing Examiner Ferson.  Plaintiff
initially asked to present defendant Clark as a witness at the
hearing, but ultimately waived that request (doc. no. 255-2, p.
3).  Plaintiff submitted his written version of the alleged events
and pleaded guilty to the Gambling charge and was found guilty of
the Possession of Contraband charge.  Defendant Ferson's
determination was upheld on appeal to the three member Program
Review Committee (PRC) (doc. no. 255-2, p. 9).

        Plaintiff admitted to having gambling paraphernalia and
betting slips (doc. no. 255-2, p. 11).  In addition, his finding
of guilt for possession of contraband was upheld by the PRC, two
of whose members are not Defendants in either Civil Action No. 99-
1956 or the case at bar.  This is sufficient evidence to conclude

that the misconduct would have issued notwithstanding Plaintiff's filing of civil action no. 99-1956. *See* Carter v. McGrady, 292 F.3d 152 (3d Cir. 2002) (holding that, even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering).

In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). As pointed out by Defendants, "[i]t is the hearing examiner's providence, and not this court's, to gauge the credibility of evidence and witnesses at a misconduct hearing." Rauso v. Vaughn, 2000 WL 873285, *8 (E. D. Pa. 2000) (citing Massachusetts Correctional Inst. v. Hill, 472 U.S. 445, 455-56 (1985) (holding that the requirement of a written statement for the reasons relied upon by the disciplinary board "does not imply that a disciplinary board's factual findings ... are subject to second-guessing upon review").

Here, this Court can not say that Defendants' decision to discipline Plaintiff for his violations of prison policy was not within their broad discretion to assure prison safety and

promote compliance with prison rules.  Thus, his first retaliation claim fails.

    2.  <u>False Statements</u>

        Plaintiff next contends that Defendants gave false statements during the investigation of Plaintiff's previously filed grievance number 969-98-PIT.  Plaintiff filed grievance number 969-98-PIT on August 11, 1998 alleging that he had been assaulted by defendant Duke on September 27, 1998 (doc. no. 255-2, p. 13).  Upon investigation, it was determined that Plaintiff had stolen a publication from the SCIP law library, was refusing defendant Duke's orders to turn over the item, and ultimately grabbed defendant Duke's shirt (doc. no. 255-2, p. 15).  Plaintiff filed a complaint reiterating the claims set forth in grievance number 969-98-PIT with the DOC Office of Professional Responsibility (OPR) and the DOC Commissioner's Office.  The OPR ordered SCIP to compile a formal investigative report.  To this end, defendant McConnell compiled a lengthy report dated October 29, 1999 detailing his investigation of Plaintiff's claims, which included interviews with Plaintiff, an inmate-witness - Tabu McClure, defendants Duke, Abrams, Crumb, Claiborne, Polando, and Reuda, review of sworn written statements by Defendants Duke, Abrams, Crumb, Claiborne, and Psychologist Reuda, incident reports by Defendants Abrams, Crumb, and Giddens, and misconduct report number A65536 charging Plaintiff with assault and refusing to obey

- 14 -

an order for refusing defendant Duke's orders to turn over the stolen book and grabbing his Duke's shirt. Notably, Plaintiff voluntarily waived the misconduct hearing, was found guilty, and sentenced to 90 days. The allegedly "false" statements of Defendants were consistent with the supporting documentation relied upon by Defendant McConnell in investigating Plaintiff's allegations of abuse.

Defendant McConnell concluded that Plaintiff's allegations of abuse were unfounded (doc. 255-2, p. 69). The OPR determined that McConnell's investigation was satisfactory and closed its case on November 12, 1999 (doc. no. 255-2, pp. 70-71). This is sufficient evidence to conclude that Plaintiff's allegations of retaliatory false statements is unfounded.

### 3. Misconduct No. A237738

Next, Plaintiff claims Defendants issued a false misconduct against him at number A237738. Plaintiff was issued this misconduct on March 27, 2000 by defendant Knight for using threatening language against an employee (doc. no. 255-2, p. 73). Specifically, Defendant Knight was investigating noises on the housing block when he passed Plaintiff's cell where Plaintiff was talking to defendant Neiport. When Plaintiff saw Knight he stated "what the fuck are you fucking doing here"... "get the fuck away from my cell," and "I don't give a fuck . . . open this door mother fucker and we'll see who leaves here . . fuck you." (Doc.

- 15 -

No. 255-2, p. 73).   Plaintiff admitted making the statements he
was accused of.   Consequently, Defendants have carried their
burden of showing that the misconduct would have issued regardless
of any retaliatory intent.

    4.   <u>Misconduct number A237741</u>

       Next, Plaintiff alleges that he was issued "fabricated"
misconduct number A237741 and that Defendant Ferson subsequently
denied his request to call witnesses at his misconduct hearing.
In this regard, on March 8, 2000, Plaintiff was ordered to reduce
his property in his cell to four boxes or less in accordance with
DOC policy.   When Plaintiff's property was packed on March 31,
2003, there was a total of 12 boxes of property and a T.V,
rendering all excess property contraband.   Accordingly, Plaintiff
was charged with Refusing to Obey an Order and Possession of
Contraband (doc. no. 255-3, p.2).   A misconduct hearing was
conducted on April 4, 200 by hearing examiner defendant Ferson.
Plaintiff requested three witnesses: two inmates and defendant
Sipos.  Defendant Ferson denied his witness requests because Sipos
was not on duty and the testimony of the inmate witnesses was not
relevant. Plaintiff submitted a written version of the relevant
events and testified during the hearing wherein he admitted he
possessed more than four property boxes.   Consequently, he was
found guilty and sentenced to 30 days DC status.   Here again,

Defendants have submitted sufficient evidence that they would have issued the misconduct regardless of any retaliatory motive.

     5.   <u>Misconduct numbers A255265 and A255266</u>

       Plaintiff contends that he was issued "fabricated" misconduct A255265, which was dismissed without prejudice and later reissued as misconduct no. A255266. Plaintiff was issued this misconduct on May 5, 2000 for refusing to show Defendant Shafer a handful of papers that he had grabbed off of a desk on the unit when ordered to do so, that in response to that order, Plaintiff threw these papers on the floor, went into his cell and refused to be un-cuffed, stating "fuck you and your fucking order." Plaintiff was charged with Using Abusive Obscene or Inappropriate Language to an Employee and Refusing to Obey an Order (doc. no. 255-3, p. 15). Plaintiff submitted a written version of the relevant events and a request for three inmate witnesses. Plaintiff was allowed one witness and the other two were denied as irrelevant. Plaintiff was found guilty and sentenced to 60 days DC status. Plaintiff's guilt was upheld by the three-person PRC, none of whom are named defendants in Plaintiff's Civil Action No. 99-1956 and only one of whom is named as a Defendant in this case.

       The right to call witnesses at a misconduct hearing is subject to the need for "mutual accommodation between institutional needs and objectives and the provisions of the

Constitution." <u>Ponte v. Real</u>, 471 U.S. 491, 495 (1985) (quoting <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 321 (1976)).  An "inmates' right to present witnesses is necessarily circumscribed by the penological need to provide swift discipline in individual cases." <u>Ponte</u>, 471 U.S. 495.  Here, Plaintiff was allowed to call the one witness he identified as an eye witness; the other two witness would have testified only that Plaintiff was subject to harassment.  Plaintiff was found guilty based on the evidence presented at his hearing, including his inmate witness.  The hearing examiner's finding of guilt based on the evidence presented is sufficient to show that Defendants would have issued the misconduct regardless of retaliatory motive.

   6.   <u>Misconduct number A220003 and Transfer to SCI-Greene</u>

Plaintiff states that he was issued fabricated misconduct number A220003, and, as a result, was transferred to SCI-Greene on June 13, 2000.  On that date, Defendant Bovo was escorting inmate Fauntleroy to an observation cell when Plaintiff stated "that's my cousin," and "if it's the last thing I do Bovo, I'll hurt you" (doc. no. 255-3, p. 23).  Plaintiff subsequently was moved to another pod and was transferred to SCI-Greene later that day.  Two days after Plaintiff's arrival at SCI-Greene, hearing examiner Ansell conducted the misconduct hearing.  Plaintiff testified that the video tape depicting the other inmate's cell move would exonerate him of the misconduct charges.

- 18 -

SCIP Hearing Examiner Ferson reviewed the video tape and concluded that the audio portion of the tape could not be clearly understood. Ansell concluded that there was some evidence that Plaintiff did threaten to harm staff and found Plaintiff guilty and sentenced him to 60 days DC status (doc. no. 255-3, p. 24). Ansell is not a named defendant in either Civil Action No. 99-1956 or the case at bar. Ansell's decision was upheld on Plaintiff's appeal to the PRC, none of which are named as Defendants in Civil Action No. 99-1956 or the case at bar. Consequently, there can be no retaliation as to the issuance and finding of guilt as to misconduct no. 220003.

Moreover, prison records show that Plaintiff was transferred to SCI-Greene due to his ongoing disruptive behavior (doc. no. 255-3, p. 34). The documents submitted by Defendants support this determination. A similar reasoning was upheld as a basis for a prisoner transfer in Burks v. Romine, 85 Fed. Appx. 274, 276, 2003 WL 23173709 at *2 (3d Cir. Dec. 2, 2003) where the Third Circuit Court of Appeals upheld a District Court's finding that the plaintiff's own pleadings demonstrated such hostility and animosity towards prison staff members to establish a legitimate penological interest supporting a transfer. Thus, Plaintiff can not prevail on his retaliation claim as to his transfer to SCI-Greene.

- 19 -

7.   <u>Defendant Onstott and Lost Property</u>

Next, Plaintiff contends that defendant Onstott shipped a box for Plaintiff to SCI-Greene that contained legal materials and that upon arrival at SCI-Greene some of those materials were missing.  Again, Defendant Onstott is not a named defendant in Civil Action no. 99-1956.  Thus, the Court is hard pressed to see how he could have retaliated against Plaintiff for filing Civil Action No. 99-1956.

Second, Civil Action No. 99-1956 was filed on December 29, 1999, six months before he was transferred.  A plaintiff must establish that there was, at least, a temporal proximity between the constitutionally-protected activity to suggest a causal link sufficient to satisfy the third prong of his retaliation claim. *See* <u>Allah v. Al-Hafeez</u>, 208 F.Supp.2d at 535.  According to Plaintiff, his Complaint in Civil Action No. 99-1956 was discovered by Defendants on September 9, 1999; however, the misconduct report Plaintiff challenges as being retaliatory was written nine months later on June 13, 2000. Thus, the temporal proximity between Plaintiff's Complaint and the misconduct report at issue is tenuous, at best.  Thus, Defendants are entitled to summary judgment as to this claim.  *See* <u>Johnson v. Rendell</u>, 56 F.Supp.2d 547, 552 (E. D. Pa. 1999) (summary judgment granted because plaintiff failed to establish causal nexus between the filing of a grievance and defendant's actions).

- 20 -

8.   <u>Defendant Holmes</u>

Next, Plaintiff claims that Defendant Holmes came to his cell on August 24, 2000 and harrassed him in retaliation for Civil Action No. 99-1956.   Again, Defendant Holmes is not a named defendant in Civil Action No. 99-1956.   Second, in resolution of Plaintiff's Grievance No. 1337-2000, Defendant McComb informed Plaintiff that he, along with Officer Miller and Officer McCracken were present during the time of the alleged incident.   These officers were interviewed and stated that when Holmes walked by Plaintiff's cell he said "what's up" as he continued to tour the pod (doc. no. 255-3, p. 37).   Third, this alleged incident occurred over a year after Defendants allegedly found a copy of the Complaint in Civil Action No. 99-1956.   Thus, the record evidence does not support Plaintiff's retaliation claim as to his accusations against Defendant Holmes.

9.   <u>Placement on AC status</u>

Finally, Plaintiff contends that he was issued a false "other" report recommending that he be placed on AC status.   In this regard, on March 1, 2001, Plaintiff met with PRC members Hassett, Miller, and Smith, who determined to keep Plaintiff on AC status rather than release him to general population at the upcoming expiration of his disciplinary custody sentence due to his disruptive behavior and need for more structured management (doc. no. 255-3, p. 42).   A second PRC hearing was held on March

6, 2001, at which time PRC members Mahlmeister, Bruno, and Grainey confirmed that AC placement was appropriate for Plaintiff (doc. no. 255-3, p. 43).

None of the PRC members are named defendants in Civil Action No. 99-1956. Moreover, this alleged incident occurred over eighteen months after Defendants allegedly found a copy of the Complaint in Civil Action No. 99-1956. Thus, the record evidence does not support Plaintiff's retaliation claim as to his continued confinement on AC status.

As demonstrated above, Defendants have sustained their burden of showing that all of their actions were motivated by legitimate penological reasons. Thus, Defendants are entitled to summary judgement as to Plaintiff's remaining retaliation claims.

### III. CONCLUSION

It is respectfully recommended that the Supplemental Motion for Summary Judgment filed by the Commonwealth Defendants (doc. no. 255) be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Dated:   September 4, 2007

_____
LISA PUPO LENIHAN
U.S. Magistrate Judge

cc:   Honorable Terrence F. McVerry
      United States District Judge

      Sean Pressley, CG-4129
      SCI Mahoney
      301 Morea Rd
      Frackville, PA 17932

      all counsel of record